STATE OF IOWA, Appellant, v. W. T. RAPH, Appellee (and two other cases).

INTOXICATING LIQUORS: Articles Employed in Violation—Possession. The court or judge, pending an action to enjoin the unlawful sale of intoxicating liquors, may, for the purpose of maintaining the *status quo,* validly issue an ex-parte order, directed to the sheriff, commanding him to retain in his possession until further orders, the different articles and things possessed by him and alleged to have been used by the defendant in carrying on the nuisance in question. So held as to an automobile.

INTOXICATING LIQUORS: Destruction of Liquors as Bearing on Right to Injunction. The destruction of the liquors which constituted the nuisance does not necessarily show that the nuisance has been wholly abated, and therefore prevent the issuance of an order of injunction.

CONSTITUTIONAL LAW: Holding Property Pending Suit. An order which requires an officer of court to hold certain property until litigation concerning the same is finally determined, does not work a deprivation of property without due process.

BONDS: The State. The State may not be required to give a bond. (Sec. 3475, Code, 1897.)

*Appeal from Fremont District Court.*—SHELBY CULLISON, Judge.

JUNE 27, 1918.

ACTION by the State for an injunction. A temporary injunction, or restraining order, was at first issued, and afterwards vacated or dissolved by the trial court, on motion of defendants, from which order the State appeals.— *Reversed.*

*H. M. Havner,* Attorney General, *F. C. Davidson,* Assistant Attorney General, and *Vernon Johnson,* County Attorney, for appellant.

*Fremont Benjamin* and *Verne Benjamin,* for appellees.

PRESTON, C. J.—There was a stipulation that the three cases might be submitted together. We shall refer to the Raph case, as have counsel in the abstract and arguments.

A brief statement of the preliminary facts is substantially this: Defendants were illegally transporting large quantities of whisky—900 pints—in three automobiles. The liquor and automobiles were seized, the liquor destroyed, under condemnation proceedings, and the defendants, being informed against, pleaded guilty to violating the liquor laws, and a fine was imposed. At the time of or soon after the seizure, the automobiles were turned over to the sheriff, who had possession thereof at the time of the restraining order hereinafter referred to, which was later dissolved and vacated. The State filed petitions for injunction, in which a temporary injunction and permanent injunction were asked, under the liquor statutes; and in addition thereto, the State asked, substantially, *that the automobiles be held by the sheriff, to await the final determination of the action;* that defendants be deprived of the automobiles in the hands of the sheriff, and that the

1. INTOXICATING LIQUORS: articles employed in violation: possession.

same be condemned; and that plaintiff have all such other and further relief as might be just and equitable.

We wish to emphasize at the outset that the matter which we have italicized is the only question before us on this appeal, and it is not now, as appellee mistakenly argues, a question for an application for a temporary injunction under the liquor statute, to restrain defendants from violating the liquor law. At another place in appellees' argument, they correctly state the proposition involved on this appeal, substantially thus: There is but one question involved in this appeal, and that is, Has a district judge the right, upon the filing of a petition to enjoin an alleged liquor nuisance, to issue a restraining order, or a temporary injunction, requiring the sheriff to retain possession in his hands, pending the trial of the injunction case, of defendants' automobiles, alleged to have been used by defendants in the maintaining of a nuisance; and can such order be made by the judge *ex parte?* Later in the brief, they broaden the argument, and claim that the trial court has no right to issue a temporary injunction, without notice, restraining defendants from violating the liquor laws, and that the effect of the order which was first made was to require the sheriff to attach the automobiles; and they say that the action is brought under Sections 2405, 2406, and 2408 of the Code, which provide for the manner of the commencement and trial of such actions, and for the method of abating a nuisance.

Appellant concedes that the action, in so far as it asks a temporary and permanent injunction to restrain a violation of the liquor laws, is brought under these statutes, as amended, but insists that, as to the matter now in controversy, as above indicated, the court, under its general equity powers, had authority, independently of the liquor statutes, to issue the restraining order as to the possession of the automobiles until final hearing, and that such order is aux-

iliary to and in aid of the principal relief asked in the petition, in order that matters might be held *in statu quo,* and that the final decree may not be ineffective.

That there may be a better understanding of the situation, we think it advisable to set out some of the other allegations of the petition, as amended, for the bearing they may have upon the real question involved. It is alleged that defendant was engaged in maintaining a nuisance in Fremont County by unlawfully transporting from outside the state into said county and upon its highways intoxicating liquors, carried upon his person, and also in an automobile (describing it); that defendant stopped his car containing said liquor, near the town of Farragut in said county; that he was arrested, and the automobile, with the liquor therein, was seized; that, at the time of such seizure in said county, defendant was engaged in the unlawful transportation of intoxicating liquors, as aforesaid, and in the unlawful keeping of the same for gift and sale, contrary to law, and in making sales thereof from said automobile; and that defendant was using his automobile as a place from which said intoxicating liquors were being sold, contrary to law, and as a place in which intoxicating liquors were being kept for sale, contrary to law; that, by reason of these facts, defendant was guilty of bootlegging, and of maintaining a nuisance in said automobile; that the three defendants were acting in concert; that defendant is not a resident of Fremont County, and has no property therein, other than the automobile; and that, unless restrained, he will remove said automobile from the county and from the jurisdiction of the court, and will continue to use the same for the purpose of bootlegging and of selling and of keeping intoxicating liquors therein for illegal sale, and for transporting the same in the same manner as hereinbefore alleged, unless an order is entered by the court requiring the said automobile to be held pending the trial and final

disposition of the case; and, if such automobile is so removed, the State will be deprived of its remedy of having the nuisance properly abated, as provided by statute; that the automobile is in possession of the sheriff of Fremont County, Iowa, but the liquors have been destroyed, under condemnation proceedings; and that defendant has entered a plea of guilty to the charge of transporting liquor illegally.

By a further amendment, plaintiff alleged that defendant loaded into and was keeping in said automobile a large quantity of intoxicating liquors, with intent to leave the same for another person to secure, and with the intent to sell and dispose of the same by gift or by sale, contrary to law, and that the defendant had received and accepted an order for the unlawful delivery and sale of the intoxicating liquors above described. The prayer, in full, is as follows:

"Wherefore, the *plaintiff prays that the said automobile be retained by the sheriff of Fremont County, Iowa, pending the final hearing and determination of this action;* that an injunction be entered against the defendant, restraining him from transporting intoxicating liquors illegally, and from the illegal sale and keeping for sale of intoxicating liquors in the state of Iowa, and that the nuisance aforesaid be enjoined and abated, and that the said automobile be forfeited, and the defendant deprived thereof; and that reasonable attorney's fees be taxed in favor of the county attorney, and that the plaintiff have all such other and further relief as may be just and equitable."

No answers were filed, and the allegations of the petition are undenied, except that, in one of the cases, an affidavit was filed by one of the defendants in support of his motion to vacate the order of Judge Wheeler, in which affidavit said defendant states that he would have removed the said car from Fremont County to the county of his residence, had not the sheriff of Fremont County prevented

such removal. This affidavit is in support of the motion
to dissolve the restraining order, and will be referred to
later.

On March 12, 1918, the petition was presented to Hon.
O. D. Wheeler, one of the judges of the district court of
Fremont County, and an order was made which recites in
part as follows:

"It is ordered that the application for the issuance of
a temporary writ of injunction be and the same is set down
for hearing on the second day of April, 1918, at nine o'clock
A. M., at the courthouse at Sidney, Iowa, before Hon. Shel-
by Cullison, judge of said court, or before any judge of said
court; that, pending the determination of said application,
and pending the further orders of this court with reference
to such matter, the sheriff retain the possession of such au-
tomobile in his custody, to the end that the same may be
dealt with as provided by law, if in fact it be found that the
defendant has used the same in maintaining a nuisance.
Ordered that defendant be given three days' notice of such
hearing."

It is from the ruling of Judge Cullison vacating this
order that this appeal is taken. It is plain to be seen, as
we have already stated, that there is but one question on
this appeal, and that is as to the possession of the automo-
bile, pending a hearing on the merits.

On March 15, 1918, defendant filed his motion to set
aside said order, and for an order requiring the sheriff to
surrender and deliver the said automobile to defendant.
The grounds of defendant's motion are: That defendant is
the owner, and entitled to the immediate possession there-
of; that the sheriff has no legal right to retain the posses-
sion of said automobile during the pendency of the suit;
that, under the laws of the state of Iowa, Chapter 6, Title
XII, Code of 1897, and amendments thereto, relating to
abatement of nuisances, there is no authority for the sher-

iff's holding possession of the automobile until final judg-
ment establishing the existence of a nuisance, and until a
written order of abatement is issued after final judgment
establishing the existence of a nuisance; that the order of
Judge Wheeler is void; that said order does not require a
bond from the State; that the order authorizes the taking
of private property without due process, and without pro-
viding compensation therefor, and it is, therefore, in contra-
vention of the Constitution of the state of Iowa and of the
United States; that said order was made *ex parte,* and
without notice to defendant. A reference was made in the
motion to the affidavit of one of the defendants, before re-
ferred to, in which it is stated that said defendant is a res-
ident of Pottawattamie County, Iowa; that, at the time of
the commencement of this action, he was not engaged in
any business in the county of Fremont, Iowa, and has not
had any office or place of business in Fremont County; that
he had demanded possession of the automobile; that no in-
toxicating liquors have been in said car since March 9,
1918.

Plaintiff resisted defendant's said motion to dissolve,
on the following grounds:

"1. The order, as herein entered, was made for the
purpose of protecting the jurisdiction of the court, and in
order, if the court held with the plaintiff, its judgment
would not be a void or empty thing; and if this court
should set aside said order, the defendant would remove
from the jurisdiction of this court the car in question, and
would make it impossible for the court to enforce any order
which it might enter in connection with its judgment as to
said cars or as to the defendants in connection therewith.

"2. This court has the inherent right to make any
order which will protect its jurisdiction, and which will
enable it to effectually carry out any final judgment which
it might enter in the case.

"3. That the holding of said property is not the taking or appropriation of it to the state, but is simply holding it, to prevent the defendant from defeating the jurisdiction of the court, and to prevent defendant from jeopardizing the fruits of the litigation before a final decision is rendered.

"4. Plaintiff states he believes the allegations of his petition can be maintained, and that all the facts therein set forth can be established by proof upon the final hearing of this action; and that, if said order is set aside, defendants herein will remove themselves from the jurisdiction of this court, and will remove the automobiles from the jurisdiction of the court, and will place themselves and said property in such a position that there can be no enforcement of the final judgment of this court.

"5. That there is no denial in the affidavit of the unlawful use of said car, as alleged in plaintiff's petition; and even if there was such denial, the plaintiff would be entitled to have said car held until said suit could be determined, if a failure to hold the same would defeat the final judgment."

On March 22, 1918, the said motion, with similar motions on similar records in the other two cases, was submitted to Judge Cullison; and on March 25, 1918, defendant's motion to vacate was sustained, and the sheriff was ordered to release the automobiles in controversy to the motioners, except that the order made by Judge Wheeler was to continue in force until 1:30 P. M., March 29, 1918. Thereafter, the State perfected its appeal, and a stay order was issued by one of the justices of this court, and an order made advancing the hearing of the cause herein.

We shall notice very briefly some of appellee's contentions, the scope of which, as said, we think is really beyond the point before us for determination.

1. One of appellee's claims is that, since the liquor

was seized on March 9th, and had been destroyed before
the petition for injunction was filed, on March 12th, there
                          was no nuisance being maintained at that
2. INTOXICATING          time, and that the alleged nuisance had been
   LIQUORS: de-
   struction of          abated.  But this does not necessarily fol-
   liquors as
   bearing on            low.  In *Roberts v. City of Louisville*, (Ky.)
   right to in-
   junction.            13 L. R. A. 844, it was held by the Kentucky
court that the withdrawal of an illegal ordinance after
commencement of the suit will not defeat the right to in-
junction against its passage, for the reason that it might
be at once offered for passage again.  And under our cases,
it has been held that it depends upon circumstances.  So
far as we know, the State may be able to show, on final
hearing, that defendant has been engaged in the business
regularly, and is likely to continue.  Plaintiff alleges in
the petition that the defendant will continue to use the au-
tomobile; and this is not denied.  Further, there may be
some question on the final hearing as to the disposition of
the automobile, and for the payment of costs.

                          2.  It would seem that to continue the
3. CONSTITUTION-         order in force would not deprive the defend-
   AL LAW: hold-
   ing property          ant of his property, the effect of the order
   pending suit.
                         being simply to hold matters *in statu quo*
until a full hearing may be had, according to law.

    3.  Defendant, appellee, contends, as we understand it,
that the statute exempting the State from giving bond has
reference only to a temporary injunction in a liquor case,
                          under Section 2405 of the Code, but Code
4. BONDS:               Section 3475, which is not in the chapter
   the State.
                         in regard to intoxicating liquors, provides:
    "The State may maintain actions in the same manner
as natural persons, but no security shall be required in
such cases."
    4.  It is next complained by appellee that the order
in question was issued *ex parte*.  It is true, as contended,

that Section 2405 of the statute requires a three days' no-
tice to be given defendant for the issuance of a temporary
injunction to restrain defendant from maintaining a nui-
sance.  But it is plain, as we have already indicated, that
such is not the nature of the order made by Judge Wheeler
and vacated by Judge Cullison.  In fact, as to that part of
the relief asked by plaintiff, the court required a three days'
notice to be given, and fixed a time for hearing.  Sections
4358 and 4359 of the Code provide that, in certain cases,
notice of the application for a temporary injunction must be
given.  It is thought by appellee that there is something
new in the contention of the State.  But it is common
practice to issue a temporary injunction *ex parte* to hold
matters *in statu quo* until a final determination of a con-
troversy.  For instance, suppose there was threatened lit-
igation in regard to a negotiable promissory note.  Clear-
ly, there could be no question but that a court could re-
strain a party from negotiating such note to an innocent
holder until a final hearing on the merits.  In a proper
case, an injunction may be issued in aid of attachment.
Numerous other instances might be given.

5.  It is argued further by appellee that the effect
of the order made by Judge Wheeler was the same as
though the sheriff had been directed to attach the auto-
mobile.  But it seems to us quite clear, from what we have
said, that the only purpose was to hold matters *in statu
quo* until a final hearing could be had.  Appellee has re-
ferred to the sections of the statute, but has cited no cases.

6.  Appellant also raises some propositions which are
more or less collateral to the main question, and we shall
refer to these briefly, without any extended discussion.  It
is contended that defendant is guilty of maintaining a
nuisance in the automobile, under Sections 2384, 2405, and
2408 of the Code, and Section 2406, Supplement to the
Code, 1913; that it is provided by law that the costs of the

action and of the abatement of the nuisance shall be first paid from the sale of the personal property employed in conducting the nuisance, and second, that, from the proceeds of the property, the fine and costs adjudged against the proprietor of the premises and the keeper of the nuisance shall be paid, the balance, if any, to be paid to the defendant; that Section 2461-a, Supplemental Supplement to the Code, 1915, defines a bootlegger, including a person who carries intoxicants in a vehicle and leaves the same in a place for another; and that Section 2461-b, Code Supplement, 1913, provides that a bootlegger may be restrained by injunction from doing or continuing to do any of the acts prohibited by law; and that other provisions of the statute in regard to injunctions are applicable to such persons; that an automobile, stopped when filled with liquor, as the petition alleges, is a "place," within the meaning of Section 2384, and on this proposition they cite *Shideler v. Tribe of the Sioux*, 158 Iowa 417, *Killman v. State*, 2 Tex. App. 222, *State v. Mullen*, 35 Iowa 199, *State v. Chauvet*, 111 Iowa 687, *State v. Render*, 163 Iowa 339, 340.

We shall not discuss these last-named cases; but some of them hold that a tent, or a hack, or a flat boat, each may be considered as a "place;" and further, in the *Shideler* case, it was held that the length of time that the liquor is kept is not controlling, and that one sale is sufficient.

7. It is conceded by appellee that the statutes of the state to suppress the liquor traffic ought to be enforced, but it is insisted that this court ought not to go further than the legislature has, and legislate upon the subject. This is readily conceded by us, and we see nothing in appellant's position that tends in that direction. But this court ought to and will keep abreast of the advanced legislation on this subject. When much of the legislation on the subject of suppression of intemperance was passed by the legislature, the business was conducted in some sort of a building, ordi-

narily; but that method of transacting such business is now
substantially done away with. It is a matter of common
knowledge that, in recent years, as legislation upon this
subject has become more strict, the increased use of auto-
mobiles has come about, for transportation and distribu-
tion of intoxicating liquors. This has been recognized by
the legislature. It is apparent that, if the owner of an
automobile, or the owners of a string of autos, can bring
nearly a thousand pints of whisky into the state, and pro-
ceed on their way after the liquor has been seized and de-
stroyed, they can continue the business, or sell the auto-
mobile, or take it out of the state, while the State is com-
pelled to give a three days' notice of an application for a
temporary injunction; and that the enactments of the leg-
islature will be rendered, to some extent, ineffective, if ap-
pellee's contentions be sustained. We are not holding that
a temporary or permanent injunction against the main-
tenance of a nuisance may be procured in any other man-
ner than that prescribed by the statute, yet we do hold that
the court has authority to issue a restraining order or a
temporary injunction, upon a proper showing, so that defend-
ant may be restrained from taking possession of such auto-
mobile pending litigation in reference thereto, or the sheriff,
or other person having possession thereof, may be restrained
from turning over the possession to the owner or another,
pending the litigation; and that this may be done without in
any manner changing the statutes in regard to the suppres-
sion of intemperance, but is done under well-recognized
principles.

The question presents itself to us, though not raised in
argument or otherwise by defendant, whether the form of
the order ought not to run against the defendant's taking
possession of the machine, or whether the sheriff ought not
to be made a party. But the sheriff is an officer of the
court. We are quite clear that the State is entitled to the

relief it asks, and the only question may be as to the form of the order, and as to whether the sheriff should be made a party. But, since the point is not raised, it is not determined.

The State cites the following cases, as sustaining the proposition that a court of equity has inherent right to retain the property in litigation *in statu quo,* so that the decree may not be defeated by removing or disposing of the property. 4 Pomeroy on Equity Jurisprudence (3d Ed.), Sections 1339, 1340; Willard on Equity Jurisprudence (Potter's Ed.), 363; 2 Beach on Modern Equity Jurisprudence, Section 639; *Candler v. Pettit,* (N. Y.) 19 Am. Dec. 399; Code Section 4356; 2 Deemer on Pleading & Practice, Section 1280; *Trustees of Iowa College v. City of Davenport,* 7 Iowa 213; *Teabout v. Jaffray,* 74 Iowa 28, 32; *Norris v. Tripp,* 111 Iowa 115, 120; *Manning v. Poling,* 114 Iowa 20, 26; *Bankers Surety Co. v. Linder,* 156 Iowa 486, 500; *New Orleans N. E. R. Co. v. Fletcher,* 20 Fed. 345; 22 Cyc. 824. See, also, 14 R. C. L. 306.

We shall not attempt a review of any considerable number of these cases. Pomeroy's Equity, Section 1340, supra, lays down this doctrine:

"Among the instances in which equity will grant an injunction, preliminary or final, in pursuance of the general doctrine as stated in the foregoing paragraph, the following are some of the most important, and they fully illustrate and establish the doctrine itself, in all its generality, and the grounds upon which it rests: To prevent the transfer of negotiable instruments at the suit of the defrauded maker or acceptor, or of the party claiming to be the true owner, or to have an interest in them; * * * or even the transfer of chattels, when of a special nature and value, such as diamonds, and like articles; * * * to prevent a defendant from affecting or encumbering the property in litigation by contract, conveyance, mortgage, or any other

act; and, in general, in all suits to enforce an equitable right against specific property, * * * the court will grant an injunction to restrain a threatened transfer of the property, whether land, chattels, or securities, during the pendency of the action."

Some of the cases seem to make a distinction between a restraining order and a temporary injunction; but even then, under that doctrine, a restraining order will be considered a temporary injunction if it is to remain effective until a final hearing. In 14 R. C. L. 306, we find the doctrine stated,—and the text is supported by numerous authorities,—thus:

"Another form in which injunctive relief is sometimes granted is by a restraining order, distinguished from other forms by the fact that it is a temporary or interlocutory order, issued on an ex-parte order of the judge for the purpose of preventing the doing of some act during the time that an application for a preliminary injunction is pending. Such an order may be issued in a proper case by the Federal courts, for the purpose of thus preserving the *status quo*. The terms 'temporary injunction' and 'restraining order,' while often used synonymously, may, therefore, be properly distinguished, a restraining order being effective only until an application for an injunction shall be heard; while a temporary injunction is a restraining order effective until the trial of the action in which it is issued. An order, however, restraining and enjoining a defendant until the final determination of an action, is to be deemed a temporary injunction, rather than a mere restraining order."

Whether, in cases like the instant case, such an order should be considered a restraining order or a temporary injunction, will depend upon the circumstances of each case, and is largely in the discretion of the judge. For instance, it might appear, at the hearing of the application

for the temporary injunction, after the three days' notice has been given, that the State has no case; or there may be other reasons why the order ought not to remain in force until a final determination. But if the showing is then sufficient, the judge can continue the order until the final hearing. In other words, the order may be modified, vacated, or continued, as in any other case, according to the circumstances. Some of the discussion in prior divisions of the opinion has a bearing upon the point now under consideration. It is unnecessary to pursue the subject further.

It is our conclusion that the trial court erred in vacating the order. It is, therefore, reversed and remanded for an order in accordance with this opinion. The restraining order issued by this court will stand until appropriate action is taken by the district court or a judge thereof. This applies to all three cases.—*Reversed and remanded.*

WEAVER, GAYNOR, and STEVENS, JJ., concur.